UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MORRIS WEATHERSPOON,

    Plaintiff,

v.                                                                    Case No. 2:13-cv-254
                                                            HON. GORDON J. QUIST

DENISE L. TONER, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Morris Weatherspoon, an inmate currently confined at the Gus Harrison Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Mary Clifford, D.D.S., Tiffany Haske[1], Melissa LaPlaunt, Debra Michaels-Cain all of whom are employed at Chippewa Correctional Facility, Adam Winkler, D.D.S., who is employed at Winkler Dental Center, and Denise L. Toner, D.D.S., who worked as a contract dentist to the MDOC.

        Plaintiff's complaint asserts that while he was confined at the Chippewa Correctional Facility (URF), Defendant Toner repeatedly denied, delayed, and disregarded Plaintiff's need for dental care and allowed Correctional Officer Brown to read Plaintiff's confidential health records and personal records. Defendant Winkler failed to provide urgent dental care for immense swelling of the gums. Defendant Clifford disclosed Plaintiff's personal medical information to inmates and

---

[1] Misspelled as Haskel in Plaintiff's complaint.

staff, causing Plaintiff to suffer verbal attacks, insults, and humiliating name calling by inmates and staff. Defendant Michaels-Cain repeatedly denied Plaintiff access to teeth cleanings in retaliation to grievances written by the Plaintiff against Defendant Michaels-Cain's coworkers. Defendant Haske tore up Plaintiff's health care request form and forced Plaintiff to wait for forty minutes for emergency care while Plaintiff suffered excruciating pain and other inmates with less emergent needs were seen. Defendant LaPlaunt failed to respond to Plaintiff's emergency needs regarding an ongoing leg problem, instead joking with Defendant Haske about Plaintiff's condition.

Plaintiff claims that Defendants' actions violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff is suing Defendants in their individual and official capacities and is seeking compensatory and punitive damages, as well as declaratory relief.

Presently before the Court is the Motion to Dismiss filed by Defendants Clifford, Haske, LaPlaunt, and Michaels-Cain, pursuant to Fed. R. Civ. P. 12(b)(6) (docket #35). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th

Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

In addition, Defendants Winkler and Toner have filed Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #39 and #40). Plaintiff has filed responses and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably

find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Defendants Clifford, Haske, LaPlaunt, and Michaels-Cain claim qualified immunity under the Eleventh Amendment. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Plaintiff claims that Defendant Clifford disclosed medical information about Plaintiff to inmates and staff in violation of his Eighth and Fourteenth Amendment rights. Specifically, Plaintiff alleges that on July 21, 2012, Defendant Clifford disclosed personal medical information about Plaintiff to inmates and staff, which created a hostile environment causing Plaintiff to suffer "embarrassing insults, verbal attacks, ridicule and harassing with humiliating name calling." Plaintiff states that he never agreed to allow Defendant Clifford to reveal his medical information to inmates.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced an objectively serious risk of harm, and that the defendant official acted with " 'deliberate indifference' to [his] health or safety." *Mingus v. Butler,* 591 F.3d 474, 479–80 (6th Cir.2010) (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (applying deliberate indifference standard to medical claims); see also *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer,* "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff has not alleged any facts sufficient to establish that Defendant Clifford was deliberately indifferent to a serious risk of harm to Plaintiff. Plaintiff merely alleges that Defendant Clifford disclosed his confidential medical information. Disclosure of an inmate's confidential medical records does not rise to the level of an Eighth Amendment violation. *See Estelle v. Gamble,*

429 U.S. 91, 107 (1976) (distinguishing an Eighth Amendment claim from a medical malpractice claim); *Walker v. Norris,* 917 F.2d 1449, 1454 (6th Cir.1990) (explaining that conduct that is negligent or even grossly negligent does not violate the Eighth Amendment). Thus, Plaintiff fails to support his claim that Defendant Clifford violated his Eighth Amendment rights.

Plaintiff also asserts that Defendant Clifford's disclosure of Plaintiff's personal medical information to inmates and staff violated Plaintiff's Fourteenth Amendment right to privacy. The Fourteenth Amendment protects an individual's interest in avoiding disclosure of personal information. *Moore v. Prevo*, 379 Fed. Appx. 425, 427 (quoting *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001)). "[I]nmates have a Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests." *Moore*, 379 Fed. Appx. at 428 (joining the opinions of other circuit courts). Regulations define protected health information as individually identifiable information. 45 C.F.R § 160.103. Individually identifiable information is information collected and maintained that refers to a person's past, current, or future physical or mental health or condition. *Id.*

In support of his claim for qualified immunity, Defendant Clifford relies on *Moore*, asserting that it is the sensitive nature of the medical information that determines whether its disclosure violates the Fourteenth Amendment, not the mere fact that it is medical information. Defendant Clifford asserts that the information allegedly disclosed in this case was not as sensitive as the medical information disclosed in *Moore*.

In *Townsend v. Reaume*, 2013 WL 3872173 (W.D. Mich. 2013), this court determined that the disclosure of mental health information did not violate the Fourteenth Amendment:

> The Sixth Circuit recognizes a right to informational privacy under the Fourteenth Amendment, but unlike other circuits, " '[it] has developed and applied a different approach to assessing informational

- 6 -

privacy claims' that 'requires that the asserted privacy interest implicate a fundamental right.' " *Lee v. City of Columbus,* 636 F.3d 245, 259 (6th Cir.2011) (quoting *Lambert v. Hartman,* 517 F.3d 433, 442 (6th Cir.2008)). The court has repeatedly rejected the idea that there is "a general constitutional right to non-disclosure of private information." *Wilson v. Collins,* 517 F.3d 421, 429 (6th Cir.2008); *see, e.g., Lee,* 636 F.3d at 261 (city's requirement that employees returning from sick leave disclose the "nature of [their] illness" to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office,* 604 F.3d 257, 270–71 (6th Cir.2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.,* 513 F.3d 580, 591 (6th Cir.2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton,* 496 F.3d 449, 455–57 (6th Cir.2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin,* 63 F. App'x 791, 793 (6th Cir.2003) (dissemination of prisoner's mental health records to parole board was not a constitutional violation); *Jarvis v. Wellman,* 52 F.3d 125, 126 (6th Cir.1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *J.P. v. DeSanti,* 653 F.2d 1080, 1091 (6th Cir.1981) (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various agencies).

Thus, a plaintiff alleging a violation of his right to informational privacy must demonstrate that "the interest at stake relates to 'those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty.' " *Bloch v. Ribar,* 156 F.3d 673, 684 (6th Cir.1998) (quoting *DeSanti,* 653 F.2d at 1090). Only after a fundamental right is identified should the court proceed to the next step of the analysis—the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1061 (6th Cir.1998). Applying these standards, the Sixth Circuit has recognized an informational-privacy interest of constitutional dimension in only two instances: (1) where the release of personal information could lead to bodily harm, *see Kallstrom,* 136 F.3d at 1061; and (2) where the information released was of a "sexual, personal, and humiliating nature." *See Bloch,* 156 F.3d at 684; *see also Lambert,* 517 F.3d at 440.

With respect to disclosure of medical information, the Sixth Circuit recently stated that it has "not yet confronted circumstances involving the disclosure of medical records that, in [its] view, are tantamount to a breach of a "fundamental liberty interest" under the Constitution." *Lee,* 636 F.3d at 261. In *Lee,* the plaintiff challenged a policy requiring city employees to disclose the "nature of [their] illness" to their immediate supervisors after taking sick leave. *Id.* at 248. The court upheld the policy, noting that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom,* or the interest in shielding sexuality and choices about sex, protected in *Bloch." Id.* at 261. Likewise, Plaintiff does not allege that the disclosure of his medical information subjected him to a risk of harm, as in *Kallstrom,* nor does he allege that the information disclosed was of a sexual or intimate nature, as in *Bloch.*

In a another case involving disclosure of prisoner medical information, the Sixth Circuit held that an inmate's constitutional right to privacy was not violated when a prison corrections officer learned from the inmate's medical records that he was HIV positive. *Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994). *But see Moore v. Prevo,* 379 F. App'x 425, 428 (6th Cir.2010) (distinguishing *Wigginton* and holding that an inmate had a constitutional privacy interest in guarding against disclosure of his HIV-positive status to other inmates, subject to legitimate penological interests).

The reasoning of *DeSanti, Wigginton* and *Lee* forecloses a Fourteenth Amendment claim in the instant case because the disclosure alleged by Plaintiff does not implicate a fundamental interest. To the extent that *Moore* favors a different result, that decision is neither binding nor persuasive in light of other published Sixth Circuit authority both predating *Moore (Wigginton),* and post-dating *Moore (Lee). Moore* does not employ the fundamental-interest analysis required by *DeSanti, Lambert, Bloch,* and *Lee,* nor does it cite any Sixth Circuit opinion in support of its holding. Instead, it expressly adopts the reasoning of the Third Circuit in *Doe v. Delie,* 257 F.3d 309 (3d Cir.2001). *See Moore,* 379 F. App'x at 427 (" 'It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information .' ") (quoting *Delie,* 257 F.3d at 317)). However, as the *Delie* court recognized, the Sixth Circuit's decisions in *Wigginton* and *DeSanti* conflicted with its own. *Delie,* 257 F.3d at 319 n. 7; *see Moore,* 379 F. App'x at 429 (Kethledge, J., dissenting). Even if the Court accepts the finding in *Moore* and *Delie* that a prisoner has an "interest" in protecting against disclosure of his HIV status to other inmates, it does not necessarily

- 8 -

> follow that such an interest is one of "constitutional dimension." *See Lambert,* 517 F.3d at 440. Moreover, even assuming arguendo that protecting a prisoner's HIV status is a "fundamental interest," it does not follow that protection of all medical and/or mental health information rises to the same level. There is no claim here that the disclosed information involved Plaintiff's HIV status.
>
> In accordance with *DeSanti, Wigginton* and *Lee,* Plaintiff does not state a Fourteenth Amendment claim because the disclosure of his mental health information as alleged here does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment.

*Townsend v. Reaume*, 2013 WL 3872173, *3-5 (W.D. Mich., 2013).

According to Plaintiff's response to Defendants' motion to dismiss, Plaintiff's medical issues included a need for basic dental care and dentures, as well as a tumor on Plaintiff's left femur. *See* Docket #46. The undersigned concludes that the disclosure of such information "does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment." *Id.* Therefore, Defendant Clifford is entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim.

Plaintiff alleges that Defendant Haske violated his Eighth Amendment right to receive treatment for his serious medical needs. In order for a prisoner to prevail on such a claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary

standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). Here, Plaintiff contends that his need for dental care was denied and delayed; the Eighth Amendment protects inmates from being denied adequate dental care. In *Flanory v. Bonn*, 604 F.3d 249, 253-54 (6th Cir. 2010), the Sixth Circuit held that allegations that an inmate had been deprived of toothpaste for 337 days and experienced dental health problems were sufficient to state an Eighth Amendment claim.[2] The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more

---

[2] "Dental needs fall into the category 'of serious medical needs' because '[d]ental care is one of the most important needs of inmates.'" *Flanory*, 604 F.3d 249 at 253 (quoting *McCarthy v. Place*, 313 Fed. Appx. 810, 814 (6th Cir.2008)).

than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

On August 7, 2012, Plaintiff entered the healthcare building at 8:00 AM for pain in his leg. Docket #1-1 at 14. Plaintiff submitted a healthcare request form regarding the pain. *Id.* After waiting forty minutes for care, Plaintiff stated to Defendant Haske, "I've been patiently waiting over 40 minutes. I have a mandatory schedule to attend and I was 3-5 person whom entered lobby and submitted itinerary to C/O Wilson." *Id.* Defendant Haske responded by ripping the health care request form into pieces. *Id.* Plaintiff states he never received treatment for the pain in his leg. *Id.* Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Haske. Therefore, Defendant Haske is not entitled to qualified immunity.

Plaintiff claims Defendant LaPlaunt was present during Defendant Haske's denial of care, but failed to intervene on Plaintiff's behalf. Plaintiff's complaint specifically alleges that Defendant LaPlaunt "failed to respond to an emergent problem regarding [Plaintiff's] ongoing problem with his leg" and instead joked with Defendant Haske about Plaintiff's condition. Docket #1, at 5. The court concludes that Plaintiff's allegations against Defendant LaPlaunt are sufficient to state a claim under the Eighth Amendment. Therefore, Defendant LaPlaunt is not entitled to qualified immunity.

Plaintiff alleges that on August 3, 2012, Defendant Michaels-Cain denied Plaintiff a teeth cleaning. Docket #1-1 at 2. Plaintiff complains that the denial of teeth cleanings is an ongoing issue and that Defendant Michaels-Cain "in many forms, various ways engaged in behavioral acts which display strong probable cause of intentional acts of conduct unbecoming of

a dentist hygenist [sic]," Docket #1-1 at 2, and that these acts were "in retaliation to the grievance's written" against co-workers of Defendant Michaels-Cain. Docket #1 at 5.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). The court concludes that Plaintiff's allegations against Defendant Michaels-Cain are sufficient to state a retaliation claim. Therefore, Defendant Michaels-Cain is not entitled to qualified immunity.[3]

Also before the court are the Motions for Summary Judgment filed by Defendants Winkler and Toner. *See* Docket ##39 and 40. A review of Plaintiff's dental records shows that on January 26, 2012, Plaintiff saw Registered Dental Hygienist Debra Michaels, who stated that he had

---

[3]Defendants state that Defendant Michaels-Cain is entitled to qualified immunity because Plaintiff fails to state an Eighth Amendment claim against Michaels-Cain. However, a review of the complaint clearly shows that Plaintiff is asserting a retaliation claim against this particular Defendant.

severe bone loss and bleeding due to advanced perio disease, and that she wanted to try using a local anesthetic to "try and smooth roots to try to get healthier gingiva." *See* docket 40-2, p. 11 of 27.

Defendant Winkler first saw Plaintiff on February 10, 2012, for an emergency examination after Plaintiff complained of tooth pain in #23. At this time, Defendant Winkler completed a full health history, performed an oral examination, and took x-rays. Defendant Winkler determined that Plaintiff had advanced severe periodontitis at tooth #23 and extracted the tooth. *See* Docket #39-3, at 3 of 4. Following the procedure, analgesics were dispensed. *Id.* at 11-12 of 27.

On February 13, 2012, Dental Assistant Beckie Rosebrook saw Plaintiff, who complained that his abscess had grown following the tooth extraction. Plaintiff stated that he thought food had gotten into the area and become infected. Plaintiff requested antibiotics. Docket #40-2, at 12 of 27. On February 13, 2012, Defendant Toner examined Plaintiff's mouth and determined that Plaintiff had an abscess caused either by residual from the extraction of tooth #23 or from tooth #24. Docket #40-2 at 12. Defendant Toner prescribed antibiotics and recommended reevaluation of tooth #24 for possible extraction. *Id.* at 12-13 of 27. Defendant Toner next saw Plaintiff on February 27, 2012, at which time Plaintiff complained he was out of antibiotics. *Id.* at 13 of 27. Defendant Toner examined Plaintiff and diagnosed a perio abscess at tooth #24, recommending extraction of the tooth in one week. *Id.* On March 12, 2012, Defendant Toner extracted Plaintiff's tooth #24. *Id.* at 13-14 of 27. Defendant Toner then informed Plaintiff that he suffered from advanced periodontal disease, and explained the cause of the disease and how to control it. Defendant Toner stated that Plaintiff's prognosis was poor, and that Plaintiff had the disease prior to his confinement by the Michigan Department of Corrections. *Id.* at 14. Defendant Toner also supplied Plaintiff with literature showing the stages of the disease. *Id.* This was the last time Plaintiff and Defendant Toner met.

On May 11, 2012, Plaintiff complained of mouth pain, stating that he needed to have a tooth pulled. Defendant Winkler extracted tooth #25 and completed tissue relief. Docket #40-2, at 15-16 of 27. On May 18, 2012, Defendant Winkler examined Plaintiff and noted that there were no signs of infection and that Plaintiff was healing well. *Id.* at 17 of 27. On May 21, 2012, Plaintiff complaint of pain around a "white bump" on the left side of Plaintiff's mouth. Plaintiff claimed that it had been present for over seven months and that he was having difficulty eating, speaking or sleeping. Plaintiff was examined by Charles Simons, DDS, who found that Plaintiff had a small raised white area on the buccal gingiva of #26. Dr. Simons stated that the area was consistent with chronic parulis[4] or scar tissue from old parulis and wrote Plaintiff a prescription for antibiotics. *Id.*

Plaintiff claims Defendant Winkler failed to provide urgent dental care for immense swelling of the gums. On June 5, 2012, Plaintiff kited that he was continuing to suffer from pain and swelling in the same area. *See* Docket #39-2, 18 of 27. On June 14, 2012, Defendant Winkler examined Plaintiff, who stated that he was concerned with his overall health and did not mention any specific complaints. Defendant Winkler performed an oral examination and found no evidence of redness, swelling, bleeding, ulceration, or infection. A radiographic examination revealed bone loss, but no acute pathology. No treatment was indicated. *Id.*

Plaintiff asserts that Defendants Winkler and Toner violated his Eighth Amendment rights. A prison doctor violates the Eighth Amendment when she exhibits "deliberate indifference to [the] serious medical needs" of a prisoner. *Estelle,* 429 U.S. at 104, 97 S.Ct. 285. An Eighth Amendment claim has an objective component and a subjective component. *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001). The objective component requires a plaintiff to prove a

---

[4]An abscess in the gum. *See* http://www.merriam-webster.com/medical/parulis.

"sufficiently serious" medical need, and the subjective component requires a plaintiff to prove that the doctors had a "sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks omitted). *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize

claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, No. 13-1673, slip op. at 12 (6th Cir. Apr. 9, 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). Furthermore, in order to show an Eighth Amendment claim based on a detrimental delay in treatment, a prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment[.]" *Santiago*, 734 F.3d at 590.

Plaintiff claims Defendants Winkler and Toner denied and delayed Plaintiff's receipt of dental treatment, causing him emotional distress, pain, anguish, fear and misery. Docket #1-1 at 10. According to dental records, Plaintiff saw Defendant Toner three times in one month. Docket #40-2 at 12-14. The longest period that Plaintiff had to wait for treatment was the period from February 27, 2012, when Defendant Toner prescribed extraction of tooth #24, until March 12, 2012, when the tooth was actually extracted. Docket #40-2 at 13-14.

Plaintiff claims that on February 27, 2012, he saw Defendant Toner because his gums were bleeding and his mouth was in excruciating pain. However, the dental notes show that Plaintiff's chief complaint was "I'm out of antibiotic." *Id.* Defendant Toner reevaluated tooth #24 and scheduled the extraction. *Id.* As noted above, after Defendant Toner performed the extraction on March 12, 2012, he informed Plaintiff that he suffered from advanced periodontal disease and that

the prognosis was poor. Docket #40-2 at 14. Defendant Toner provided Plaintiff with literature showing the stages of the disease. *Id.*

As noted above, Plaintiff was provided dental care by Defendant Toner three times in one month. Defendant Toner prescribed antibiotics, extracted an abscessed tooth, and explained periodontal disease, its cause, treatment, and Plaintiff's prognosis. With regard to Defendant Winkler, the record shows that he saw Plaintiff on four occasions and that he responded to Plaintiff's concerns by examining Plaintiff's mouth, providing x-rays of Plaintiff's teeth, extracting teeth as necessary, and providing Plaintiff with information regarding his condition. These actions fail to demonstrate that either Defendant Toner or Defendant Winkler were deliberately indifferent to Plaintiff's needs. Plaintiff has failed to come forward with any verifying medical evidence to show that he suffered any ill effects as a result of the treatment provided by Defendants Toner or Winkler. Therefore, Defendants Toner and Winkler are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

Plaintiff also claims a Fourteenth Amendment violation against Defendant Toner for allowing Correctional Officer Brown read Plaintiff's confidential health records and personal information pertaining to a grievance filed by Plaintiff on April 10, 2012. However, as noted above, this conduct does not constitute a violation of the Fourteenth Amendment. Therefore, Defendant Toner is entitled to dismissal of this claim.

To the extent that Plaintiff is claiming his state law rights were violated by Defendants Toner and Winkler, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine*

*Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719 (6th Cir. Sep. 28, 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966).

In summary, in addressing the Motion to Dismiss on the grounds of qualified immunity (docket #35), the undersigned concludes that Defendants Haske and LaPlaunt are not entitled to dismissal of Plaintiff's Eighth Amendment claims against them. In addition, the undersigned concludes that Defendant Michaels-Cain is not entitled to dismissal of Plaintiff's retaliation claim. Conversely, the undersigned recommends that the court grant Defendant Clifford's request for dismissal of Plaintiff's claims involving the dissemination of dental information. Finally, the undersigned recommends that the court grant the Motions for Summary Judgment filed by Defendants Toner and Winkler (docket #39 and #40).

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 22, 2014